UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLANCHE STANLEY,

       Plaintiff,

v.

Case No. 24-cv-10094
Honorable Linda V. Parker

NAGEL PAPER, INC.
d/b/a ABZAC US,

       Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This lawsuit, which asserts claims of interference and retaliation under the Family Medical Leave Act ("FMLA"), arises from Plaintiff's termination of employment on April 24, 2022.  The matter is presently before the Court on Plaintiff's motion for summary judgment.  (ECF No. 20.)  The motion has been fully briefed.  (ECF Nos. 22, 23.)  Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

### I.   Factual Background

Defendant Nagel Paper Inc. is a company that manufactures cardboard packaging products.  (ECF No. 20, PageID.592.)  Between January 2021 and January 2022, Defendant merged with another manufacturer, Abzac US.  (ECF No.

22-4, PageID.1000; ECF No. 22-8, PageID.1120.)  Plaintiff Stanley has worked for Abzac-related entities, intermittently, since 2003.  (ECF No. 22, PageID.964.)  She was rehired by Abzac US in October 2020 and was later promoted to a supervisory position.  (*Id.*, PageID.965; ECF No. 20, PageID.592.)

Plaintiff suffers from several psychological conditions, including anxiety, bipolar disorder, and depression.  (ECF No. 20, PageID.593.)  On January 25, 2022, Plaintiff visited a psychiatrist to seek treatment for these conditions.  (ECF No. 20-3, PageID.718.)  Plaintiff's medical records reflect that her symptoms were severe and that she informed her psychiatrist that she needed to take time off from work.  *Id.*  Around this same time, Plaintiff applied for in-patient treatment at the Life Healing Center in Santa Fe, New Mexico.  (ECF No. 20, PageID.593.)

On January 26, 2022, Plaintiff informed her plant manager, Brandy Weaver, that she needed to take time off to attend inpatient therapy.  *Id.*  In late January or early February of 2022, Brandy Weaver relayed this information to Stacie Weller, Defendant's human resources manager.  (ECF No. 22-7, PageID.1090.)  Weller explored various leave options for Plaintiff, including potential FMLA leave. (ECF No. 22-7, PageID.1090.)  However, after evaluating Plaintiff's request under the FMLA criteria, Weller incorrectly concluded that Plaintiff was ineligible.[1]

---

[1] Weller incorrectly believed that Plaintiff had not worked for Nagel Paper, Inc. for the required 12 month minimum to qualify for FMLA leave.  However, Nagel Paper, Inc. had recently completed a merger with Abzac US.  Plaintiff had been employed by Abzac US since October 2020.  (ECF No. 22-7, PageID.1090; ECF No. 20, PageID.594; ECF No. 22, PageID.966.)

(ECF No. 20-5, PageID.759.)  The Parties have since stipulated that Plaintiff was eligible for FMLA leave when she initially requested time off.  (*See* ECF No. 20-6, PageID.771.)

If Weller had properly analyzed Plaintiff's FMLA eligibility when initially requested, Plaintiff's twelve-week leave period would have run from February 14, 2022, to May 9, 2022.  (ECF No. 20, PageID.594.)  Instead of granting leave under the FMLA, Weller allowed Plaintiff to take a four-week leave of absence beginning on February 14, 2022, and ending on March 15, 2022.  (ECF No. 20-7, PageID.773.)  Weller testified in her deposition that she intended to give Plaintiff leave that would be "the same as an FMLA [leave]."  (ECF No. 22-7, PageID.1090.)

Weller spoke with Plaintiff about the length and terms of her approved leave.  The record also reveals that Weller verbally informed Plaintiff that her leave was conditioned on her agreement to only return on a temporary basis to train her replacement.  (ECF No. 20-8, PageID.777; ECF No. 22, PageID.967.) Brandy Weaver and Stacie Weller documented Plaintiff's request, the reason for her request, and the leave period in a leave of absence approval letter.  (ECF No. 20-7, PageID.774.)  The extra condition related to Plaintiff's temporary employment upon return was not reflected in the letter.  *Id.*, PageID.773-74.

3

Plaintiff did not return to work at the end of her four-week period.  (ECF No. 22, PageID.966.)  Plaintiff contacted Weller shortly after her return date and informed her that she would be in treatment for an additional five weeks.  (ECF No. 20-5, PageID.752.)  Weller verbally agreed to extend Plaintiff's leave by five weeks; she assumed that Plaintiff's return date would be approximately April 19, 2022.  (ECF No. 20-9, PageID.779; ECF No. 22, PageID.967; ECF No. 22-7, PageID.1100.)  Weller did not generate a new approval letter to reflect Plaintiff's extended leave period.  (ECF No. 22-5, PageID.753; ECF No. 22-7, PageID.1100.)

Weller attempted to contact Plaintiff on several occasions during her extended leave period.  (ECF No. 20-11, PageID.784.)  Plaintiff did not return any of Weller's phone calls.  (ECF No. 20, PageID.596.)  The Parties offer different reasons to explain Plaintiff's lack of response.  Plaintiff argues that Weller called to encourage Plaintiff to sign a resignation letter, and that Plaintiff had no reason to return the calls because she did not intend to resign.  (ECF No. 20, PageID.596; ECF No. 20-10, PageID.781.)  Conversely, Defendant contends that Weller only called to "figure out how [the Parties] were going to move forward."  (ECF No. 22, PageID.968.)  Weller left Plaintiff at least three voicemail messages during this period.  (ECF No. 20-11.)  Almost all of the voicemail messages discussed the

4

resignation letter or Plaintiff's unemployment process.[2] (ECF No. 20-11, PageID.784.) On April 19, 2022, Weller sent Plaintiff a certified letter stating that, due to Plaintiff's lack of communication, Plaintiff's employment with Defendant would terminate on April 24, 2022. (ECF No. 20-12, PageID.786; ECF No. 22, PageID.968.)

As a consequence of her termination, Plaintiff's insurance benefits were set to expire at the end of April 2022. (ECF No. 22-7, PageID.1094.) On May 4, 2022, Plaintiff wrote a letter to Maryse Poire', who serves as the Chief Financial officer of Abzac-Canada.[3] In the letter, Plaintiff shared that she believed that her termination was unlawful and that Defendant's discontinuation of her insurance coverage was causing issues with her upcoming treatments. (ECF No. 20-10, PageID.781.) In response, Maryse Poire' contacted Weller and asked if she could reactivate Plaintiff's insurance for a period of six months. (ECF No. 20-13, PageID.789.) Weller responded that they would have to reinstate Plaintiff as an employee to reinstate her insurance. (ECF No. 20-13, PageID.789.) Weller sent emails to other HR representatives and advised against reinstating Plaintiff as an employee. (ECF No. 20-14, PageID.795; ECF No. 22-7, PageID.1108.) Weller

---

[2] Weller acknowledged in her deposition that the voicemail messages reflected resignation and unemployment concerns rather than Plaintiff's ability to return to work. (ECF No. 22-7, PageID.1102-03.)
[3] Abzac-Canada is the senior business partner of Nagel Paper, Inc. (ECF No. 20, PageID.593.)

instead set up a COBRA[4] account on Plaintiff's behalf. (No. 20-15, PageID.800-01.)

Plaintiff's COBRA insurance coverage was set to last until at least December 1, 2022. (ECF No. 20-15.) Weller admitted to logging into Plaintiff's COBRA account and waving her insurance coverage for 2023. (*Id.*, PageID.801.) When Plaintiff sought to reactivate her COBRA coverage, she learned that she would be required to pay all insurance premiums from the date of her termination. Plaintiff could not, and did not, pay the outstanding balance. (ECF No. 20-2, PageID.707.) Consequently, Plaintiff was unable to continue treatment with her psychiatrist and went without medication and care until she found new providers who accepted Medicaid. (ECF No. 20, PageID.599; ECF No. 20-2, PageID.708.)

Plaintiff filed this lawsuit against Defendant on January 12, 2024. (ECF No. 1.) She subsequently filed the present motion on March 19, 2025, seeking summary judgment on her interference and retaliation claims under the FMLA. *See* 29 USC 2615(a)(1).

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material

---

[4] The Consolidated Omnibus Budget Reconciliation Act (COBRA) gives workers the right to continue health benefits for a limited amount of time under certain circumstances, such as voluntary or involuntary job loss, reduction in the hours worked, transition between jobs, death, divorce, and other life events. [CITATION]

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The Court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion,

"including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(c)(4).  "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy."  *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (internal quotations and brackets omitted).

Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments.  *See, e.g.*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").  The parties

8

are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

### III.    Applicable Law and Analysis

Section 2612(a)(1)(D) of the Family and Medical Leave Act ("FMLA") provides that eligible employees may take up to twelve weeks of leave during any twelve month period because of a "serious health condition that makes the employee unable to perform the functions of the position[.]" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing 29 U.S.C. § 2612(a)(1)(D)). Employees who return to work within the twelve-week statutory period are entitled to return to their position or an equivalent position.  29 U.S.C § 2614(a)(1).

Plaintiff alleges that Defendant violated the FMLA by interfering with her attempt to exercise her rights and by retaliating against her for taking FMLA leave. The Sixth Circuit recognizes these two discrete theories as: (1) the "'interference' or 'entitlement' theory arising from § 2615(a)(1)," and (2) "the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (citations omitted).  The proofs required for these theories differ.  The Court will address Plaintiff's arguments in turn.

9

## A. Interference or Entitlement Theory

An employer violates the FMLA when it "interfere[s] with, restrain[s], den[ies] the exercise of, or an attempt to exercise" FMLA rights.  29 U.S.C. § 2615(a)(1) (cleaned up).  To establish a prima facie case of FMLA interference, Plaintiff must show that:

> (1) she was an eligible employee, (2) the Defendant was an employer as defined under the FMLA, (3) she was entitled to FMLA leave, (4) she gave the Defendant notice of her intention to take leave, and (5) the Defendant denied or interfered with the FMLA benefits to which she was entitled.

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citations omitted).

Defendant does not dispute the first two prongs of the interference analysis.[5]

Additionally, Defendant does not expressly dispute that Plaintiff was entitled to FMLA leave or that she provided notice of her intention to take leave.[6]  Even if it had, Defendant memorialized Plaintiff's request in her leave of absence approval

---

[5] Defendant's counsel sent an email to Plaintiff's counsel confirming this position. *See* ECF No. 20-6, PageID.771 ("I have [ . . .] confirmed that we will not be disputing that as of January/February 2022, Ms. Stanley met the eligibility criteria for [the] Family and Medical Leave Act relating to the 12 months, 12,50 [sic] hours/past 12 months, and working at a company location that is considered covered (50+employees within 75 hours.) We will not be disputing any of those issues.")

[6] Plaintiff informed her plant manager that she needed time off to attend impatient psychiatric care but did not mention FMLA leave in her request. (ECF No. 22-8, PageID.1124.)  This is inconsequential. An employee can satisfy the notice requirement without explicitly asking for FMLA leave. *See Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549 (6th Cir. 2006) (citing 29 C.F.R. § 825.302 ) ("The notice may be verbal, and it "need not expressly assert rights under the FMLA[.]")). The Sixth Circuit has described the notice prong as a "low threshold requirement[.]" *Reeder v. Cty. of Wayne*, No. 16-2257, 2017 WL 2463299, at *4 (6th Cir. June 7, 2017).

letter and indicated that Plaintiff was taking leave for "admittance to a mental health facility for anxiety/depression treatment." (ECF No. 20-7.) This evidence is sufficient to demonstrate that Plaintiff was entitled to FMLA leave under 29 U.S.C. § 2612(a)(1)(D),[7] and that Plaintiff gave Defendant notice of her intention to take leave. The Court will therefore proceed to evaluate whether the record presents a genuine dispute of material fact on the fifth element of Plaintiff's prima facie case.

Under the interference theory "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban v. West Pub. Co.*, 345 F.3d 390, 401 (6th Cir. 2003)(citations omitted). "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because "the FMLA does not provide leave for leave's sake but instead provides leave with an expectation [that] an employee will return to work after the leave ends." *Edgar*, 443 F.3d at 507 (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir.2005)).

Importantly, an employer's belief or "intent is not a relevant part of the interference analysis. *Edgar*, 443 F.3d at 507; *see also Arban*, 345 F.3d at 401

---

[7] Under § 2612(a)(1)(D), an eligible employee is entitled to FMLA leave if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position[.]"

11

("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.")

An employee-plaintiff can establish an FMLA interference claim through either direct or circumstantial evidence. "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).

Here, Plaintiff advances several theories of interference. Some of these theories include: (1) Defendant's failure to reinstate Plaintiff to her former position, (2) Defendant's creation of a COBRA account without Plaintiff's permission, and (3) Defendant's failure to provide notices required by 29 C.F.R. § 825.300. (ECF No. 20, PageID.601.) These allegations constitute circumstantial evidence because they would require the Court to make an inference to determine how Defendant's conduct interfered with Plaintiff's FMLA rights. The Court need not reach those issues because the record contains undisputed direct evidence of interference.

The record shows that Defendant misinformed Plaintiff that she was not eligible for FMLA leave and then explicitly conditioned Plaintiff's ability to take a leave of absence on her agreement to return only on a temporary basis. (ECF No. 20, PageID.594; ECF No. 22, PageID.966-7; ECF No. 22-7, PageID.1090; ECF No. 20-8, PageID.777.) These statements — which are either supported by the

12

record or admitted to by Defendant — directly deny and restrain rights guaranteed by the FMLA and establish interference as a matter of law.

Defendant does not dispute that its HR representative, Stacie Weller, evaluated Plaintiff's request under FMLA criteria and concluded that she did not qualify. (ECF No. 22, PageID.966.) It is also undisputed that Weller communicated this conclusion to Plaintiff and "instead allowed Plaintiff to take a leave of absence. *Id.* Misinforming Plaintiff of her eligibility, regardless of Weller's intent, and substituting a shortened non-FMLA leave served as interference because it effectively denied Plaintiff benefits to which she was entitled.[8] Under Sixth Circuit precedent, an employer's intent is irrelevant; the question is simply whether the employer's actions interfered with, restrained, or denied the exercise of FMLA rights. *See Edgar*, 443 F.3d at 508.

Defendant also interfered with Plaintiff's FMLA rights through Weller telling Plaintiff that her leave was conditioned upon her only returning on a temporary basis to train her replacement. (ECF No. 20-8, PageID.777.) This

---

[8] Allegations that employer "failed to properly advise employee of her substantive rights" under FMLA are sufficient to sustain an interference claim. *Fisher v. Rizzo Bros. Painting Contractors*, 403 F. Supp. 2d 593, 599 (E.D. Ky. 2005) (citing *Arban*, 345 F.4d at 401); *see also Lutes v. United Trailers, Inc.*, 950 F.3d 359, 365 (7th Cir. 2020) (citing 29 C.F.R. §§ 825.300(d), 825.301(a))("An employer's failure to notify the employee that her leave qualifies as FMLA leave may be interference with the employee's FMLA rights "if it caused the employee to suffer harm."); *see also Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp. 2d 789, 795-96 (S.D. Ohio 2006) (noting that an employer can be held liable for interference with FMLA entitlements if it incorrectly advises an employee regarding her leave rights).

13

communication, in and of itself, is direct evidence of FMLA interference. Defendant's briefing also confirms that several relevant employees were aware of this condition.  *See* ECF No. 22, PageID.967 ("[I]t had been Plant Manger Weaver's understating [that] when Plaintiff came back, her purpose would be to help train somebody for the . . . position that she held."); *see also id.* at 968. ("Weller had the same understanding.")  Requiring an employee to give up the statutory right to reinstatement in order to take leave violates the FMLA because it would undoubtedly discourage employees from taking leave. Such a condition also undermines the FMLA's guarantee of reinstatement to the same or an equivalent position. 29 U.S.C § 2614(a)(1). Employers may not condition an employee's leave on surrendering that right.

Even after viewing all evidence in the light most favorable to Defendant and drawing all inferences in favor of Defendant, the record supports Plaintiff's claim of interference. Defendant has not disputed — and on occasion has relied on — the direct evidence in the record proving interference.  *See* ECF No. 22, PageID.967-68. Therefore, no genuine dispute of material fact remains. Plaintiff is entitled to summary judgment on this claim.

## B. Retaliation

Plaintiff alleges that she suffered retaliation for taking FMLA leave because Defendant failed to reinstate her and filled her position with a new hire.  (ECF No.

14

20, PageID.605.)  The FMLA makes it unlawful to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act.]"  *Id.* at § 2615(a)(2) (cleaned up).  The central issue raised by the retaliation theory is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason."  *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508).  An employer's motive is an integral part of the analysis.  *Edgar*, 443 F.3d at 508.

### 1. *Direct Evidence*

An employee-plaintiff may establish an FMLA retaliation claim through direct evidence.  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).  Direct evidence of discrimination 'must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of the FMLA, but also that the employer acted on that predisposition."  *Id.* (citations removed). Unlike circumstantial evidence, no inferences are required for direct evidence; "the illegal animus is 'explicitly expressed.'"  *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 Fed. App'x 404, 408 (6th Cir. 2012) (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir.2006).

The Sixth Circuit has expressed that direct evidence of retaliation is rare. *See Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998) ("Rarely will there be direct evidence from the lips of the defendant proclaiming his or her [ ] animus.").

15

Direct evidence "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

Here, Plaintiff alleges that the record provides direct evidence of retaliation. (ECF No. 23, PageID.1164-65.)  The Court disagrees.  Plaintiff points to several events as purported direct evidence, including: (1) Weller telling Plaintiff that, after taking leave, she would be required to return on a temporary basis to train her replacement; (2) Weller leaving Plaintiff voicemail messages that referenced a resignation letter; (3) Weller stating in Plaintiff's termination letter that Plaintiff was discharged for failing to communicate, and (4) Weller signing Plaintiff's termination letter on the same day that Plaintiff's leave was set to expire. Contrary to Plaintiff's belief, these examples serve as circumstantial evidence of retaliation rather than direct evidence.

Direct evidence requires a statement or document that, if believed, shows that the employer took adverse action *because of* the employee's exercise of FMLA rights, without requiring the Court to draw any inference. The record contains no such explicit expression of retaliatory or anti-FMLA animus. Because this evidence only inferentially supports Plaintiff's claim of retaliation, it is not direct evidence of FMLA retaliation. Accordingly, the Court will move forward with the analysis by construing Plaintiff's evidence as circumstantial evidence.

16

*2. Circumstantial Evidence*

Absent direct evidence of unlawful conduct, an FMLA retaliation claim can also be proven through the *McDonnell Douglas* burden-shifting framework. *Sajar Plastics, Inc.*, 544 F.3d at 707); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff must first establish a prima facie case of FMLA retaliation. If Plaintiff satisfies this initial showing, the burden then shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. If Defendant does so, the burden then shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for unlawful discrimination. *Bryson v. Regis Corp.*, 498 F.3d 561 (6th Cir. 2007).

To establish a prima facie case of FMLA retaliation, Plaintiff must show that: (1) she was engaged in a statutorily protected activity; (2) Defendant knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 691 F.3d at 283 (citation omitted). Viewing the facts in the light most favorable to Defendant and drawing all reasonable inferences in Defendant's favor, the record reflects genuine issues of material fact that preclude summary judgment.

Defendant does not dispute that Plaintiff engaged in an activity protected by the FMLA or that she suffered an adverse employment action when Defendant

17

terminated her and failed to reinstate her to her former position. (ECF No. 22, PageID.979.)  Defendant, however, contests two elements of the prima facie case: (1) that it had knowledge that Plaintiff was exercising her FMLA rights and (2) that there is a causal connection between plaintiff's protected activity and her termination. The Court will address each element in turn.

### a. Defendant's Knowledge

The knowledge requirement in a FMLA retaliation claim is distinct from the notice requirement in an interference claim. In the interference context, an employee need not expressly reference the FMLA to provide sufficient notice of a potentially qualifying leave. *See* C.F.R. § 825.302(c). But a claim of retaliation requires more. Because retaliation turns on whether an employer acted adversely *because* an employee exercised FMLA rights, the employer must have actually understood that the employee was invoking FMLA protections specifically, not merely requesting leave in general.  Indeed, an employer cannot retaliate against protected activity it did not know was occurring.

Plaintiff argues that Defendant knew she was exercising her FMLA rights because she "discussed the need for inpatient psychiatric treatment[.]" (ECF No. 20, PageID.605.)  Conversely, Defendant maintains that it was not aware that Plaintiff was exercising her rights under the FMLA.  As Plaintiff didn't request FMLA leave when she approached Weaver, Weller was under the impression that

18

Plaintiff was ineligible for FMLA leave, and Plaintiff's written leave of absence letter classified her leave as "non-FMLA." (ECF No. 20-7, PageID.773; ECF No. 22, PageID.979-82.)

The Parties' competing evidence creates a genuine dispute of material fact regarding Defendant's knowledge. Although Plaintiff's evidence could support a finding that Defendant knew that Plaintiff needed a leave of absence to address mental-health concerns *generally*, a reasonable jury could also conclude that Defendant lacked the specific awareness required for an FMLA-retaliation claim. Accordingly, this issue is best determined by a jury and summary judgment is inappropriate.

### b. Causation

As for causation, Plaintiff offers several pieces of evidence to suggest that her protected activity motivated her termination: (1) emails between Weller and Maryse Poire' indicated that Plaintiff could only return on a temporary basis; (2) Weller's voicemail messages mentioned a resignation letter; (3) Plaintiff's termination letter references Plaintiff's failure to communicate as the reason for her termination, and (4) Plaintiff's termination letter was signed on the last day of her approved leave period. (ECF No. 23, PageID.1165.) Plaintiff argues that this evidence proves that Plaintiff's leave served as a motivating factor for her termination.

However, when the record is viewed in the light most favorable to Defendant, genuine issues of material fact exist regarding causation, and a reasonable jury could find that Defendant terminated Plaintiff for reasons unrelated to her protected activity. Defendant argues that it terminated Plaintiff because she failed to return Weller's phone calls. Defendant also asserts that it believed that Plaintiff wanted to resign in order to address her mental-health concerns, and that its voicemail messages reflected that understanding rather than any retaliatory intent. (ECF No. 22, PageID.973.) Viewing the record in the light most favorable to Defendant, a reasonable jury could credit this explanation and find that Defendant acted based on its understanding that Plaintiff intended to resign and failed to communicate that she planned to return, not because she exercised FMLA rights. Because Plaintiff's evidence supports one inference and Defendant's evidence supports another, summary judgment is unwarranted.

## IV.   Conclusion

For the reasons stated, the Court concludes that Plaintiff's FMLA interference claim succeeds, and summary judgment is appropriate on that issue. The Court also finds that there is a genuine dispute of material fact as to whether Plaintiff can establish all elements of a prima facie case for FMLA retaliation.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is

**GRANTED IN PART** and **DENIED IN PART.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: April 17, 2026